**F O R   P U B L I C A T I O N**

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

MODESTO DIVISION



| | |
|---|---|
| In re | Case No. 04-91823-A-13G |
| JAMES and DIANA KELLER, | Docket Control No. DN-1 |
| Debtors. | |

Dan Nelson, Esq., Stockton, California for the debtors, James and Diana Keller.

Russell D. Greer, Chapter 13 Trustee, Modesto, California.

**MEMORANDUM DECISION**

Within two months of filing their May 12, 2004 chapter 13 petition the debtors, James and Diana Keller, confirmed a plan requiring them to make 48 monthly payments of $2,175 to the trustee for distribution to their secured and unsecured creditors. Their plan also provides that "[u]nless all allowed unsecured claims are paid in full, the plan shall not terminate earlier than the stated term or 36 months, whichever is longer."

Plan payments are being funded solely by "the future projected disposable income of" the debtors. See 11 U.S.C. § 1322(a)(1). That is, the plan does not provide for proceeds from the sale or refinance of property to supplement the debtors' future income as a source for plan payments.

From this stream of plan payments, unsecured creditors have been promised no less than a 31.5% dividend. Based on scheduled claims, this dividend will amount to approximately $5,254.15. Because the plan requires that plan payments continue for the full 48 months (unless claims are paid in full over a shorter period), the 31.5% dividend is the minimum unsecured creditors will receive. See In re Pedersen, 229 B.R. 445, 452-53 (Bankr. E.D. Cal. 1999) (explaining the "base or percentage plan, whichever is greater"). If unsecured claims are less than expected, holders of allowed unsecured claims could receive more than a 31.5% dividend.

Like all chapter 13 debtors, the debtors run the risk that anytime before they make their last plan payment, the trustee or an unsecured creditor might move to modify the plan in order to increase the amount payable to unsecured creditors. See 11 U.S.C. § 1329(a)(1).[1]

---

[1] 11 U.S.C. § 1329 provides:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to--
    (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
    (2) extend or reduce the time for such payments; or
    (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.
(b) (1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.
    (2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.
(c) A plan modified under this section may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was

However, the debtors have filed a motion seeking leave to refinance their home. They propose to use the loan proceeds to pay in full all existing liens encumbering their home and to complete their chapter 13 plan. That is, after having made only 14 of the 48 monthly payments the plan requires them to make, the debtors wish to "pay off" their plan and thereby preclude the trustee and unsecured creditors from ever modifying their plan. May they do so?

The debtors have not filed a modified plan and served it on the trustee, the United States Trustee, and all creditors as required by Fed. R. Bankr. P. 3015(g). Thus, the issue becomes whether it is permissible to pay off a chapter 13 plan within a significantly shorter period of time than required by the confirmed plan.

It might be argued that the provision in the debtors' plan for 48 monthly payments of $2,175 is merely a formula that defines a total amount the debtors are obligated to pay to creditors. Arguably, this amount, $104,400, may be paid in a lump sum or in regular monthly installments over the 48-month term of the plan.

There is support for this argument. Some courts permit a chapter 13 debtor to pay off the plan on an accelerated basis without first confirming a modified plan shortening the length of the plan.

This occurred, for example, in In re Smith, 237 B.R. 621 (Bankr. E.D. Tex. 1999), *affirmed*, 252 B.R. 107 (E.D. Tex. 2000).

---

due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

Case 04-91823    Filed 08/29/05    Doc 21

In Smith, the debtor was required by the chapter 13 plan to make 56 monthly plan payments funded by the debtor's income. However, in the 27th month of the plan, the debtor used a gift from family to pay a lump sum equal to all remaining monthly installments. The court ruled that the debtor was not required to modify the confirmed plan in order to shorten its length to 27 months. Instead, a chapter 13 debtor "may tender all the payments due and owing under a confirmed plan on an accelerated basis, and thereby create an entitlement to a discharge. . . ." In re Smith, 237 B.R. at 626. See also Matter of Caspar, 154 B.R. 243, 246 (N.D. Ill. 1993); In re Bergolla, 232 B.R. 515 (Bankr. S.D. Fla. 1999).

This court respectively disagrees for several reasons.

First, if a court is prepared to permit a debtor to accelerate payments, the same logic would permit the deferral or reduction of monthly plan payments as long as, by the last month of the plan, the payments have been caught up. After all, if the length of the plan and the amount of the monthly plan payment are nothing more than the two components of a formula determining the total amount due creditors, why not permit the debtor to make a lump sum payment in the last month of the plan?

This is not permitted because a debtor, like a creditor, is bound by all plan provisions, including those requiring regular monthly payments. See 11 U.S.C. § 1327(a).

Second, a chapter 13 plan is required to provide for the means of its execution. "The plan shall . . . provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan. . . ."

See 11 U.S.C. § 1322(a)(1). If necessary to pay claims, a debtor's earnings and income may be supplemented by "property of the estate or property of the debtor." See 11 U.S.C. § 1322(b)(8). See also In re Gavia, 24 B.R. 573, 575 (B.A.P. 9th Cir. 1982) ("[W]e construe [section 1322(b)(8)] as permitting a plan to supplement payments from future income.").

It makes little sense to require that a plan specify how it will be funded, and to require regular monthly payments that continue for at least 3 years, then verify that the debtor has the ability to make such payments only to permit the debtor to perform differently than required by the plan. See 11 U.S.C. §§ 1322(a)(1), 1325(a)(6) & (b).

Insisting that a debtor perform the plan as it was confirmed is more than just rigid adherence to formality. There may be good reason to question the source of an accelerated lump sum payment. If a debtor has a sudden ability to make a large lump sum payment, this may indicate that the debtor's income has increased significantly or that the debtor has received a windfall. In either case, the debtor's new financial ability might warrant confirming a modified plan in order to pay more to creditors rather than just paying off the dividends promised in the original plan.

Third, when a debtor makes an accelerated lump sum payment rather than the regular monthly payments required by the plan, the debtor is preempting the right of the trustee and the unsecured creditors to propose a modified plan should circumstances (such as an increase in the debtor's income) warrant a modification. See 11 U.S.C. § 1329(a).

Fourth, if the debtor wants to sell or refinance property and use the proceeds to fund, in part, the plan, the debtor may provide for this in the original plan. See 11 U.S.C. § 1322(a)(1) & (b)(8). Of course, if the debtor also wishes to maintain payments over less than 3 years without paying unsecured creditors in full, the debtor risks an objection from the trustee or an unsecured creditor pursuant to section 1325(b). See 11 U.S.C. § 1325(b).[2] Why should the debtor be permitted to

---

[2] 11 U.S.C. § 1325(a) & (b) provides:

(a) Except as provided in subsection (b), the court shall confirm a plan if--
    (1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;
    (2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;
    (3) the plan has been proposed in good faith and not by any means forbidden by law;
    (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;
    (5) with respect to each allowed secured claim provided for by the plan--
        (A) the holder of such claim has accepted the plan;
        (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
        (C) the debtor surrenders the property securing such claim to such holder; and
    (6) the debtor will be able to make all payments under the plan and to comply with the plan.
(b) (1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--
        (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

preclude the trustee or an unsecured creditor from raising this objection by promising to fund payments from earnings over a 3-year period then, as soon as the plan is confirmed, ending the plan by making the lump sum payment?

Of course, creditors may prefer to be paid sooner rather than later. If the debtor initially proposes to fund a plan with an exempt asset, a gift, or the proceeds from a sale or refinance of property, creditors may jump at the chance to trade the right to receive three years of disposable income for a quicker lump sum payment.

If a plan has already been confirmed, the debtor can ask that it be modified to end sooner than 3 years. Indeed, the recent decision of a divided panel in <u>Sunahara v. Burchard (In re Sunahara)</u>, 376 B.R. 768 (B.A.P. 9th Cir. 2005), suggests that the debtor's prospects of confirming such a modified plan are quite good. In <u>Sunahara</u> the panel held that the disposable income requirement of section 1325(b) does not apply to a modified plan

---

        (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.
(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended--
        (A) for the maintenance or support of the debtor or a dependent of the debtor, including charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to a qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)) in an amount not to exceed 15 percent of the gross income of the debtor for the year in which the contributions are made; and
        (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

proposed after confirmation of the initial plan. See In re Sunahara, 376 B.R. at 781.

The Sunahara majority explained its conclusion that section 1325(b) does not apply to modifications under section 1329 as follows:

> Section 1329(b) expressly applies certain specific Code sections to plan modifications but does not apply § 1325(b). Period. The incorporation of § 1325(a) is not, as has been posed by some courts, the functional equivalent of an indirect incorporation of § 1325(b). Under § 1329(b), only the "requirements of Section 1325(a)" apply to modifications under § 1329(a). § 1329(b). As previously noted, § 1325(a) requires that 'except as provided in [1325]b, the court shall confirm a plan if. . . .' Thus, the 1325(a) confirmation requirements incorporated into § 1329(b) exclude the provisions of § 1325(b).

See In re Sunahara, 376 B.R. at 781.

This logic is debatable and is contrary to the weight of authority. See Alan N. Resnick and Henry J. Sommer, eds., Collier on Bankruptcy, 15th Ed. Rev., Vol. 8, ¶ 1329.05[3] (2005); Keith M. Lundin, Chapter 13 Bankruptcy, 3rd Ed., vol. 3, § 255.1 (2000). While it is true that section 1329(b) does not mention section 1325(b), it does not "exclude the provisions of section 1325(b)."

The omission of section 1325(b) from section 1329(b) should not be taken to mean that section 1325(b) is not applicable to modified plans. Section 1329(b) requires that a modified plan comply with section 1325(a). Section 1325(a), in turn, provides that "[e]xcept as provided in subsection (b), the court shall confirm a plan if" the six requirements of sections 1325(a)(1) – (a)(6) are satisfied. From the perspective of an objecting unsecured creditor, section 1325(a) provides that a plan must be

confirmed if unsecured creditors will receive the present value of the dividend payable in a chapter 7 case unless the debtor's projected disposable income over three years would pay a higher dividend. If a debtor's future disposable income will pay more than the liquidation dividend, confirmation must be withheld unless the plan provides for the higher dividend.

Rather than read section 1325(b) as always qualifying section 1325(a), the panel in Sunahara in effect interpreted the first phrase in section 1325(a) as if it read, "if subsection (b) applies." The cross-reference in section 1325(a) to section 1325(b) suggests that subsection (b) comes into play whenever subsection (a) is applicable.

Nonetheless, assuming that section 1325(b) does not apply to a modified plan proposed after confirmation of the initial plan, the assistance offered by Sunahara to a debtor seeking to end a plan in less than 3 years without paying unsecured claims in full may be illusory.

Instead of objecting to such a modified plan because it does not comply with section 1325(b), Sunahara invites the trustee and unsecured creditors to complain that it has not been proposed in good faith as required by 11 U.S.C. § 1325(a)(3).[3] See In re Sunahara, 376 B.R. at 781-82.

This is ironic given that section 1325(b) was added to the Bankruptcy Code in 1984 because of "a spate of discordant judicial opinion concerning whether the 'good faith' clause

---

[3] It should be noted that section 1325(b) does not come into play unless the trustee or an unsecured creditor raises the objection. All plans, however, must be proposed in good faith. See 11 U.S.C. § 1325(a)(3). No objection is necessary to raise the issue.

imposes minimum debt-repayment requirements as prerequisites to the confirmation of chapter 13 plans." See Oversight Hearing on Personal Bankruptcy Before the Subcommittee on Monopolies and Commercial Law of the House Committee on the Judiciary, 97th Cong., 1st and 2nd Sess. 184-85, testimony of Judge Conrad K. Cyr [footnote omitted]. Prior to 1984, many courts labeled plans as being proposed in bad faith when they failed to pay unsecured creditors an "arbitrary minimum-percentage dividend," or "the proposed dividend was either not 'substantial,' not 'meaningful,' not 'substantial and meaningful,' not 'equitable,' or not 'fair and equitable,' or . . . the plan did not represent the debtor's 'best efforts'. . ." Id. at 195-96 [footnotes omitted].

By seizing upon the good faith requirement of section 1325(a)(3), some pre-1984 courts imposed "subjectively contrived refinements upon subsections 1325(a)(4), (5) and (6), the only confirmation criteria of a quantitative nature to be found anywhere in chapter 13." Id. at 187 [footnote omitted]. And, as is usually the case when courts apply a subjective standard, results differed dramatically. "As between a district in which it is held that a chapter 13 plan must represent the debtor's 'best effort' and return no less than 70% to holders of unsecured claims, and a neighboring district in which a 1% dividend is regarded as sufficient provided it represents the debtor's "best effort,' the uniformity to be expected in the administration of an important law of commerce enacted by Congress pursuant to its constitutional power 'To establish . . . uniform laws on the subject of Bankruptcies throughout the United States' may reasonably be thought somewhat lacking." Id. at 194-95

[footnotes omitted; emphasis in original].

The holding in <u>Sunahara</u> once again threatens to place chapter 13 debtors at the mercy of a good faith standard that is sure to produce disparate results and be arbitrary in its application.

Is it bad faith *per se* to propose a modified plan that does not either pay unsecured claims in full or commit all projected disposable income for a minimum of three years as was the conclusion in <u>In re Guentert</u>, 206 B.R. 958, 961 (Bankr. W.D. Mo. 1997)?

Must the modified plan pay some arbitrary percentage to unsecured creditors in order to pass muster under section 1325(a)(3) as some courts required before the 1984 amendments to the Bankruptcy Code? <u>See</u>, <u>e.g.</u>, <u>In re Raburn</u>, 4 B.R. 624 (Bankr. M.D. Ga. 1980).

Or, must the court weigh each debtor's economic circumstances to determine whether the dividend payable to unsecured creditors under a modified plan is the debtor's best efforts or is otherwise sufficiently substantial, meaningful, fair, or equitable? This is the approach suggested by <u>Sunahara</u>, which held that determining good faith "necessarily requires an assessment of a debtor's overall financial condition including, without limitation, the debtor's current disposable income, the likelihood that the debtor's disposable income will significantly increase . . . over the remaining term of the original plan, the proximity of time between confirmation of the original plan and the filing of the modification motion, and the risk of default over the remaining term of the plan versus the certainty of

1 | immediate payment to creditors." See In re Sunahara, 376 B.R. at
2 | 781-82.
3 |     Whatever the approach, the unfortunate result of Sunahara is
4 | that the economic content section 1325(b) drained from the good
5 | faith analysis has been restored.  Consequently, debtors
6 | modifying confirmed plans in order to reduce their length to less
7 | than 3 years without paying unsecured claims in full are likely
8 | to face "a spate of discordant judicial opinion" as courts put a
9 | price tag on good faith.
10 |     So, the debtors in this case have a choice.  Their motion to
11 | borrow will be approved but if they also wish to complete their
12 | confirmed plan with an accelerated lump sum payment, it must be
13 | sufficient to pay unsecured claims in full.  Alternatively,
14 | assuming the debtors are able to convince the court that, given
15 | their particular economic circumstances, payments for less than 3
16 | years without paying unsecured claims in full satisfies section
17 | 1325(a)(3), they must modify their plan.
18 |     The debtors have opted to use the loan proceeds to pay their
19 | unsecured creditors in full.
20 | Dated: 29 Aug. 2005

By the Court

_____
Michael S. McManus, Chief Judge
United States Bankruptcy Court

-12-

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA

## CERTIFICATE OF SERVICE

**The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was served by mail to the following entities listed at the address(es) shown below.**

Dan Nelson
PO Box 1770
Stockton, CA 95201


Russell Greer
PO Box 3051
Modesto, CA 95353-3051


Office of the US Trustee
501 I St, Ste 7-500
Sacramento, CA 95814


DATED: 30 Aug 2005          By: /s/ Beverly Door
                                **Deputy Clerk**